Filed 9/30/97 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

      1997 ND 970094      

Dion Fuhrman,                              Claimant and Appellant

       v.                                                        

North Dakota Workers

Compensation Bureau,                                     Appellee

Civil No. 970094

Appeal from the District Court for Burleigh County, South Central Judicial District, the Honorable Bruce B. Haskell, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Neumann, Justice.

Steven L. Latham (argued), of Wheeler Wolf, P.O. Box 2056, Bismarck, ND 58502-2056, for claimant and appellant.

Lawrence A. Dopson (argued), Special Assistant Attorney General, P.O. Box 1695, Bismarck, ND 58502-1695, for appellee.

Fuhrman v. North Dakota Workers Compensation Bureau

Civil No. 970094

NEUMANN, Justice.

[¶1] Dion Fuhrman appealed from an order affirming the Workers Compensation Bureau's suspension of Fuhrman's disability and rehabilitation benefits for his failure to comply with a rehabilitation training plan.  We hold the Bureau's conclusion that financial inability cannot constitute good cause for noncompliance with a rehabilitation plan is not in accordance with the law.  We further hold the Bureau's finding Fuhrman did not demonstrate financial inability to comply with the Bureau's rehabilitation plan is not supported by a preponderance of the evidence.  We reverse and remand with instructions the Bureau reinstate benefits and pay accrued benefits.

[¶2] Fuhrman suffered a work-related injury to his right knee, hip, hand, back, and neck on January 31, 1994 when he fell from a truck bed while loading goods for his employer, Modern Machine Works, Inc., in Bismarck.  Fuhrman's claim for benefits was accepted by the Bureau, which paid related medical expenses and disability benefits.  

[¶3] As a result of the injuries, Fuhrman could not return to his previous job.  The Bureau initiated rehabilitation services under N.D.C.C. Ch. 65-05.1 and performed a medical and vocational assessment of Fuhrman as required by that chapter.  The Bureau then approved a rehabilitation training plan for Fuhrman to attend a  computer-assisted design drafting course in Minneapolis, Minnesota.  After reviewing other possible in-state training opportunities, the Bureau ultimately scheduled Fuhrman to attend the Minneapolis training program, beginning March 4, 1996 to be completed sometime in the summer of 1997.  

[¶4] Fuhrman advised the Bureau he did not have the financial ability to relocate to Minneapolis for the training while also maintaining his home and family in Bismarck, unless the Bureau provided him with additional benefits or an advance of the statutory 25 percent household allowance.
(footnote: 1)  The Bureau denied Fuhrman's request for either additional benefits or an advance.  When Fuhrman did not attend the start of the training session, the Bureau informed him he was in noncompliance with the rehabilitation plan and ordered suspension of his disability benefits.  

[¶5] Fuhrman requested a hearing.  It was conducted by an  administrative law judge, who concluded Fuhrman had demonstrated good cause for failing to attend the Minneapolis training program and recommended the Bureau reinstate benefits and devise a rehabilitation plan to address Fuhrman's concerns by providing him with an additional allowance for relocation to Minneapolis or an advance of the household allowance.  The Bureau reviewed the administrative law judge's recommendation and found Fuhrman "failed to establish his inability to obtain the funds he alleged were necessary to attend the retraining program."  The Bureau concluded "[c]laimant's assertion that he did not have the financial means to relocate to Minneapolis for retraining does not constitute good cause under N.D.C.C. Section 65-05.1-04(6) for claimant's failure to attend the specific qualified rehabilitation program selected for him.  Claimant therefore is in noncompliance with the Bureau's vocational rehabilitation program. . . ."  The Bureau affirmed its order suspending disability and rehabilitation benefits, and Fuhrman appealed.  The district court affirmed the Bureau's order, and Fuhrman filed this appeal.

[¶6] On appeal, we review the decision of the Bureau, rather than that of the district court, and we limit our review to the record before the Bureau.  
Maginn v. N.D. Workers Compensation Bureau
, 550 N.W.2d 412, 415 (N.D. 1996).  We affirm the Bureau's decision, unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law.  
Johnson v. N.D. Workers' Compensation Bureau
, 496 N.W.2d 562, 563 (N.D. 1993).  In determining if the Bureau's findings of fact are supported by a preponderance of the evidence we determine only whether a reasoning mind could have determined that the Bureau's factual conclusions were supported by the evidence.  
Id
. 
at 564; 
Power Fuels, Inc. v. Elkin
, 283 N.W.2d 214, 220 (N.D. 1979).  

[¶7] The dispositive issue on this appeal is whether Fuhrman presented good cause for failing to comply with his rehabilitation plan by not attending the Minneapolis training course.  The relevant statutory provision, N.D.C.C. § 65-05.1-04(6), states:

"6. . . . If, without good cause, the injured  employee . . . fails to attend a specific qualified rehabilitation program within ten days from the date the rehabilitation program commences, the  employee is in noncompliance with vocational rehabilitation. . . .  In all cases of noncompliance by the employee, the bureau, by administrative order, shall discontinue lost-time benefits."
(footnote: 2)

[¶8] The statute does not define the phrase "good cause" for purposes of this chapter.  In another context, whether a claimant for unemployment compensation had good cause to refuse to apply for or accept suitable work, we defined good cause as "a reason that would cause a reasonably prudent person to refuse to apply for employment under the same or similar circumstances."  
Lambott v. Job Service North Dakota
, 498 N.W.2d 157, 159 (N.D. 1993).  In a similar context, whether a worker was disqualified from receiving unemployment compensation because she quit employment without good cause attributable to her employer, this court similarly defined  good cause as "a reason for abandoning one's employment which would impel a reasonably prudent person to do so under the same or similar circumstances."  
Esselman v. Job Service North Dakota
, 548 N.W.2d 400, 402 (N.D. 1996).  

[¶9] Under N.D.C.C. § 65-05.1-04(6), a claimant is disqualified from receiving disability and vocational rehabilitation benefits if the claimant fails to attend an approved rehabilitation program without good cause.  In this context, we can apply a similar definition to good cause that we used in the employment cases.  A claimant has good cause for failing to attend a rehabilitation program if the claimant has a reason that would cause a reasonably prudent person to refuse to attend the rehabilitation program under the same or similar circumstances.

[¶10] The Bureau argues failure to comply with a rehabilitation plan for economic reasons cannot, as a matter of law, constitute good cause for noncompliance under this statute.  The Bureau's position is untenable.  One can certainly envision circumstances where a claimant simply cannot afford to attend a training program without the help of some advance payment, especially when the training requires, as in this case, a temporary relocation to an out-of-state community.  One can envision numerous circumstances  involving economic or financial hardship which, without an advance, would cause a reasonably prudent person not to attend a rehabilitation training program far away from home for financial reasons.  We conclude, therefore, the Bureau's determination that a claimant's failure to comply with a rehabilitation plan for economic reasons cannot constitute good cause for noncompliance is not in accordance with the law.  

[¶11] The purpose of a vocational retraining program is to substantially rehabilitate a worker to his pre-injury earning capacity.  
Held v. N.D. Workers Compensation Bureau
, 540 N.W.2d 166, 169 (N.D. 1995).  To meet this objective, the Bureau must devise a training plan which is practically workable and economically feasible for the claimant.
(footnote: 3)  When a claimant comes forward, as Fuhrman did in this case, with a credible objection that he does not have the financial ability to relocate and attend an out-of-state training program, the Bureau cannot simply reject the claimant's assertion and evidence of financial inability without further investigation of the claimant's financial and economic circumstances.  The Bureau, acting as both a factfinder and an advocate in considering a worker's claim, cannot place itself in a fully adversarial position to the claimant, but must consider the entire record, clarify inconsistencies, explain its reasons for disregarding evidence favorable to the claimant, and also explain its rationale for rejecting an administrative law judge's favorable recommendation for a claimant.  
Blanchard v. N.D. Workers Compensation Bureau
, 1997 ND 118, ¶23, 565 N.W.2d 485. 

[¶12] Fuhrman is married and owns a home in Bismarck.  He presumably has all of the financial responsibilities associated with home ownership.  Prior to his injury he was earning $36,000 per year.  Fuhrman's weekly disability benefits of $447.50, including the additional 25 percent household allowance while attending the out-of-state training, are considerably less than his pre-injury earnings.  When Fuhrman notified the Bureau he was financially unable to relocate to Minneapolis for the training, without an advance on the household allowance, the Bureau made no further investigation of the facts but simply found him in noncompliance without good cause.  On this record, we conclude the Bureau's finding that Fuhrman did not have good cause for failing to attend the training program is not supported by a preponderance of the evidence. 

[¶13] The Bureau's order terminating Fuhrman's benefits for noncompliance with the rehabilitation plan is reversed, and the case is remanded for reinstatement of benefits and payment of accrued benefits erroneously terminated. 

[¶14] William A. Neumann

Mary Muehlen Maring

Herbert L. Meschke

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.

FOOTNOTES
1:    
N.D.C.C. § 65-05.1-06.1(2)(b) provides in relevant part:

“2. If the appropriate priority option is short-term or long-term training, the vocational rehabilitation award must be within the following terms:

*     *     *     *     *

“b. The rehabilitation allowance must include an additional twenty-five percent when it is necessary for the employee to maintain two households . . . .”

2:    
Unless otherwise provided, the statutes in effect on the date of an injury govern workers compensation benefits.  
Thompson v. North Dakota Workers’ Compensation Bureau
, 490 N.W.2d 248, 251 (N.D. 1992).  This statute, as amended by the Legislature in 1997, now provides that for noncompliance the Bureau shall discontinue “disability and vocational rehabilitation” benefits.  The type of benefits terminated by the Bureau is not at issue in this case. 

3:    
Rehabilitation services expressly include services "necessary to assist the employee and the employee's family in the adjustments required by the injury" and "economic and social rehabilitation."  N.D.C.C. § 65-05.1-01(2).  In devising a feasible rehabilitation plan the Bureau's counselors should work with claimants to resolve the practical, financial, and economic problems that may arise on an individualized, case-by-case basis.