1998 ND 86

**Gregory HOYEM, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee**

and

**Robert Gibb & Sons, Inc., Respondent**

**Civil No. 970274.**

Supreme Court of North Dakota.

April 28, 1998.

Mark G. Schneider (argued) and Steven C. Schneider (appearance), of Schneider, Schneider & Schneider, Fargo, for claimant and appellant.

Andrew L.B. Noah, Special Assistant Attorney General, Fargo, for appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Gregory Hoyem appealed from a judgment affirming a North Dakota Workers Compensation Bureau decision awarding him benefits for a permanent partial impairment but deciding he was not entitled to an evaluation for chronic pain. We affirm the Bureau's decision holding Hoyem was not entitled to a chronic pain evaluation.

[¶ 2] Hoyem sustained a work-related injury to his lower back on July 10, 1990. The Bureau accepted Hoyem's claim and paid him associated benefits.. In December 1993, Hoyem's treating physician, Dr. Paul Lindquist, evaluated Hoyem for permanent partial impairment. Dr. Lindquist concluded Hoyem had a 22 percent whole-body impair-

ment using the Range of Motion Model (ROM Model) under the Third Edition (Revised) of the American Medical Association's "Guides to the Evaluation of Permanent Impairment."

[¶ 3] In January 1994, the Bureau's medical director, Dr. E.J. Laskowski, informed Dr. Lindquist the Bureau had been using the Diagnosis–Related Estimates Model (DRE Model) of the Fourth Edition of the AMA Guides since October 1993, and asked Dr. Lindquist to evaluate Hoyem under the DRE Model. In February 1994, Dr. Lindquist reported Hoyem had a category II injury under the DRE Model, resulting in a five percent whole-body impairment.

[¶ 4] Based on Dr. Lindquist's evaluation under the DRE Model, the Bureau awarded Hoyem $3,000 for a five percent whole-body impairment. Hoyem petitioned for reconsideration. An administrative law judge (ALJ) recommended affirming the Bureau's five percent whole-body impairment award. The ALJ also concluded the greater weight of the evidence established Hoyem's persistent somatic low back pain derived from an identifiable physiological source and was not "chronic pain" under Chapter 15 of the Fourth Edition of the AMA Guides. The ALJ recommended the Bureau conclude Hoyem was not entitled to a chronic pain evaluation. The Bureau adopted the ALJ's recommendations. The district court affirmed the Bureau's decision, and Hoyem appealed.

[¶ 5] On appeal from a district court's review of a decision by the Bureau, we review the Bureau's decision. *Frohlich v. North Dakota Workers Comp. Bur.*, 556 N.W.2d 297, 300 (N.D.1996). Under N.D.C.C. §§ 28–32–19 and 28–32–21, we affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. *Frohlich*, 556 N.W.2d at 300. In deciding whether the Bureau's findings of fact are supported by a preponderance of the evidence, we exercise restraint and do not make independent findings of fact, or substitute

our judgment for that of the Bureau. *Id.* at 301. Rather, our review is limited to whether a reasoning mind reasonably could have decided the Bureau's findings were proven by the weight of the evidence from the entire record. *Flink v. North Dakota Workers Comp. Bur.*, 1998 ND 11, ¶ 9, 574 N.W.2d 784.

[¶ 6] In *McCabe v. North Dakota Workers Comp. Bur.*, 1997 ND 145, 567 N.W.2d 201, we recently considered which version of the AMA Guides should be used to evaluate a claimant's impairment under N.D.C.C. §§ 65–05–12 and 65–01–02(26), which incorporated the "most recent" and "most current" edition of the AMA Guides for rating the percentage of permanent impairment. We outlined the chronologies of the enactments of the relevant statutes and publications of the various editions of the AMA Guides:

> "When the statutory language designating the Guides as the standards for evaluation of permanent impairment was adopted in 1989, the Third Edition of the Guides, which designated only the ROM Model for evaluating spinal injuries, was in effect. The Third Edition Revised of the Guides, which retained the ROM Model, was published in December 1990 and was in effect when N.D.C.C. § 65–01–02(26) was amended and reenacted in 1991. The Fourth Edition of the Guides was published in June 1993. The Fourth Edition designated the DRE Model as the preferred method for evaluating spinal injuries, but retained the ROM Model to be used to assist in determining what DRE category applied if there was uncertainty."

*McCabe*, 1997 ND 145, ¶ 8, 567 N.W.2d 201.

[¶ 7] In *McCabe*, the Bureau argued the Fourth Edition was the "most recent" and "most current" edition of the Guides when the claimant was evaluated for a permanent partial impairment. To avoid a constitutional conflict regarding delegation of legislative power to the AMA, we rejected the Bureau's argument for automatic incorporation of future versions of the Guides, and we construed the permanent partial impairment statutes, N.D.C.C. §§ 65–05–12 and 65–01–02(26), to adopt the most recent and most current edition of the AMA Guides in existence when the statutes were enacted. *McCabe*, 1997 ND 145, ¶ 16, 567 N.W.2d 201. Under *McCabe*, the Bureau must evaluate claimants under the edition of the AMA Guides in effect when the statutes incorporating the Guides were enacted.

[¶ 8] Here, Hoyem was evaluated for permanent partial impairment in 1993 when the Third Edition (Revised) of the AMA Guides was in effect. Subsequent to Hoyem's appeal the Bureau has agreed to rate Hoyem for permanent partial impairment under that edition of the AMA Guides, and the only issue remaining in this appeal involves his claim for an impairment evaluation and rating for pain under Appendix B of the Third Edition of the AMA Guides.[1]

[¶ 9] Hoyem argues the Bureau's order denying him an evaluation and rating for pain must be reversed and remanded, because the Bureau improperly evaluated his pain under Chapter 15 of the Fourth Edition instead of under Appendix B. The Bureau responds Chapter 15 of the Fourth Edition is "nearly identical" to Appendix B, and Hoyem is not entitled to an evaluation for chronic pain, because his claim involves a chronic pain issue similar to the one we reviewed and rejected in *Feist v. North Dakota Workers Comp. Bur.*, 1997 ND 177, 569 N.W.2d 1. The Bureau argues a reasoning mind could have reasonably determined Hoyem was not entitled to a separate chronic pain evaluation under the AMA Guides.

[¶ 10] In *Feist*, 1997 ND 177, ¶ 16, 569 N.W.2d 1, the claimant argued he was entitled to an evaluation for an additional impairment based on chronic pain under Chapter 15 of the Fourth Edition. The Bureau argued the claimant was not entitled to an additional permanent impairment for pain because his pain was included in his impairment rating under the DRE Model of the Fourth Edition.

---

1. Both the Third Edition and the Third Edition Revised of the AMA Guides include "Appendix B: Pain and Impairment." The Fourth Edition of the AMA Guides deals with impairment ratings for pain in Chapter 15.

[¶ 11] We decided the Third Edition of the AMA Guides applied to the claimant's demand for a chronic pain evaluation, and we described the requirements for a "chronic pain" rating under that edition:

"The *AMA Guides* recognize pain as being either 'acute' or 'chronic.' *AMA Guides* (3rd ed.), p. 240. The Stedman's Medical Dictionary (5th Lawyers' Edition 1982) p. 20, defines 'acute' as '[o]f short and sharp course, *not chronic;* ' and, at p. 278, Stedman's defines 'chronic' as '[o]f long duration; denoting a disease of slow progress and long continuance.' (Emphasis added.) According to the *AMA Guides,* chronic pain may 'contribute to the evolution of the chronic pain syndrome. Within the framework of this definition, chronic pain may exist in the absence of chronic pain syndrome, but chronic pain syndrome always presumes the presence of chronic pain.' Chronic pain syndrome 'represents a biopsycho-social phenomenon of maladaptive behavior with far reaching medical, social, and economic consequences.' *AMA Guides* (3rd ed.), p. 241. The AMA has outlined 'characteristics (the six D's) [that] should be considered as establishing the diagnosis of a chronic pain syndrome.' *Id.* The six characteristics are: duration, dramatization, drugs, despair, disuse, and dysfunction."

*Feist,* 1997 ND 177, ¶ 17, 569 N.W.2d 1.

[¶ 12] We held although the claimant presented evidence he suffered from pain, he did not present medical evidence he suffered from chronic pain or had been diagnosed with chronic pain syndrome as those terms were used in the Third Edition. *Feist,* 1997 ND 177, ¶ 18, 569 N.W.2d 1. We therefore affirmed the Bureau's decision the claimant was not entitled to an evaluation for chronic pain.

[¶ 13] Here, the Bureau adopted the ALJ's recommendation about Hoyem's claim for a chronic pain evaluation:

"6. (Conclusion of law) Under Chapter 15 of the American Medical Association's *Guides to the Evaluation of Permanent Impairment,* Fourth Edition, 'chronic pain' is synonymous with 'chronic pain syndrome'; describes a biopsychosocial behav-

ior in which the original physiologic cause usually no longer serves as an underlying pain generator; is maladaptive and grossly disproportional to any underlying noxious stimulus; and is distinguishable from persistent somatic pain causally related to a physiologic source such as a tissue injury or pathologic state.

"7. (Findings of fact) Greg Hoyem continues to experience persistent low-back pain. That pain is somatic and derives from a physiologic condition, variously diagnosed as 'degenerative disk disease with radiographic evidence of spinal stenosis' and 'chronic [low back] strain and underlying spondylosis.' It increases or diminishes in intensity relative to the extent of exertional activities involving his low back. He has continued to work despite his pain, and any diminishment in his level of participation in family and social activities is pursuant to a rational attempt to avoid exacerbating the spinal point source of his pain. His pain-related behavior is rational, is not maladaptive, and is not grossly disproportional to his identified condition.

"8. (Conclusion of law) The greater weight of the evidence establishes that the persistent somatic low-back pain that Greg Hoyem experiences derives from an identified physiologic source, and is not chronic pain within the scope and intent of Chapter 15 of the American Medical Association's *Guides to the Evaluation of Permanent Impairment,* Fourth Edition. As such, his referral for a chronic pain evaluation is not warranted."

[¶ 14] The ALJ's recommendation effectively follows our *Feist* analysis of chronic pain under the Third Edition. Hoyem, like the claimant in *Feist,* presented evidence he suffered from pain, but the Bureau adopted the ALJ recommendation finding Hoyem had not established he suffered from "chronic pain;" and he had not been diagnosed with "chronic pain syndrome" as those terms are used in the AMA Guides. Based on this record and the requirements for a chronic pain rating in Appendix B, a reasoning mind reasonably could conclude the Bureau's finding Hoyem did not suffer from chronic pain and had not been diagnosed with chronic

pain syndrome was proven by the weight of the evidence. We conclude the Bureau's finding is supported by a preponderance of the evidence. Hoyem has therefore failed to establish he was entitled to an evaluation for chronic pain under Appendix B.

[¶ 15] Hoyem also claims Appendix B differentiates between "acute pain" and "acute recurrent pain"[2] and contends he was entitled to an impairment rating for "acute recurrent pain" under the emphasized language for evaluating pain as an impairment in Appendix B:

> "*Acute pain:* Impairment and any resulting disability are primarily a function of the underlying pathological process, giving rise to physical tissue damage and nociceptive pain. In most instances, impairment and disability will be partial and temporary.

> "*Acute recurrent pain:* The considerations of impairment and any resulting disability are the same as in acute pain. *However, given the chronic nature of the underlying pathological process, impairment and disability could well be total and permanent.*"

Hoyem argues "it is clear from a comparison of 'Appendix B: Pain and Impairment' and 'Chapter 15: Pain' that the concept of 'acute recurrent pain' is emphasized in the former and deemphasized in the latter." Hoyem thus asserts he was entitled to an impairment evaluation and rating for "acute recurrent pain" under Appendix B.

[¶ 16] Hoyem did not raise this distinction as an issue to the Bureau and to the district court within the framework of his argument that Appendix B applied to his claim for a pain evaluation and rating. We have often said issues not raised before an administrative agency will not be considered for the first time on appeal. *E.g. Symington v. North Dakota Workers Comp. Bur.*, 545 N.W.2d 806, 810 (N.D.1996). We therefore decline to address Hoyem's argument about acute recurrent pain.

[¶ 17] We affirm the Bureau's decision Hoyem was not entitled to an evaluation for chronic pain and chronic pain syndrome.

[¶ 18] SANDSTROM, NEUMANN and MARING, JJ., concur.

MESCHKE, J., concurs in the result.

---

2. Appendix B provides:

"*Acute Pain*

"This alerting mechanism is an early warning signal that protects an individual from somatic tissue damage. *Acute pain is generally of recent onset and of short duration.* It seldom represents a major diagnostic or therapeutic problem. *The physical injury giving rise to the noxious stimulus results in pain perception and pain behavior, which are usually commensurate with and appropriate to the underlying pathogenesis.* Appropriate management includes establishing a correct diagnosis and providing palliative measures, such as analgesic medication and immobilization of the injured part. Pain abatement accompanies tissue healing. Impairment and/or disability rarely transcend the underlying pathology.

"*Acute Recurrent Pain*

"This subset of acute pain represents a somewhat more complex concept. It refers to episodic noxious sensations resulting from tissue damage in chronic disorders, such as arthritis, tic douloureux, and malignant neoplasms. The teleological significance, diagnostic evaluation, and medical management of acute recurrent pain remain basically the same as those of acute pain. Acute recurrent pain may be controlled effectively with traditional modalities of treatment, such as analgesic medication and immobilization. However, because of the chronicity of the underlying pathological process, the intensity and the duration of health care and the resulting impairment and/or disability are considerably greater in magnitude. Acute recurrent pain at times has been erroneously referred to as chronic pain, thereby giving rise to further confusion of the concept."