1999 ND 66

James HOFFMAN, Claimant
and Appellant,

v.

NORTH DAKOTA WORKERS
COMPENSATION BUREAU,
Appellee.

No. 980182.

Supreme Court of North Dakota.

April 9, 1999.

Joseph F. Larson II, Jamestown, ND, for claimant and appellant.

Harry Malcolm Pippin, Special Assistant Attorney General, Williston, ND, for appellee.

MARING, Justice.

[¶ 1] James Hoffman appealed from a district court judgment affirming the North Dakota Workers Compensation Bureau's suspension of Hoffman's disability and rehabilitation benefits for his failure to comply with a rehabilitation training plan. We reverse, holding James Hoffman had "good cause" under N.D.C.C. § 65–05.1–04(6) to not attend the approved vocational rehabilitation program when the Bureau wrongfully denied him a second domicile allowance. We remand for reinstatement of benefits and

payment of accrued benefits erroneously terminated.

## I

[¶ 2] Hoffman suffered a work-related injury to his arm on January 31, 1992, while working as an automobile mechanic helper and muffler installer for Scotti's Exhaust Company in Jamestown, North Dakota. The Bureau accepted Hoffman's claim and began paying associated medical expenses and disability benefits. In December 1992, the Bureau initiated vocational rehabilitation services under N.D.C.C. ch. 65–05.1, and Hoffman underwent a medical and vocational assessment as required by that chapter. The Bureau determined Hoffman's first appropriate rehabilitation option under N.D.C.C. § 65–05.1–01(4) was short-term training of a year or less.

[¶ 3] Over the course of the next two years the Bureau's vocational rehabilitation consultants worked with Hoffman to identify an appropriate retraining program. While various types of programs were contemplated, for reasons not clear from the record, none were selected during this time. The record does reflect, however, that James Hoffman's relationship with the Bureau and its representatives was hardly an amicable one. During the latter part of 1994, Hoffman made a number of threats of physical violence to his vocational rehabilitation consultant. As a result, the Bureau replaced Hoffman's rehabilitation consultant with another, and instructed the new consultant to have no contact with Hoffman while developing Hoffman's vocational rehabilitation plan.

[¶ 4] On January 5, 1995, the Bureau selected the Meyer Vocational Technical School's (Meyer VoTech's) industrial safety/security and investigations training program as Hoffman's rehabilitation program. Hoffman's physician approved his participation in the plan. The Meyer VoTech program, located in Minot, North Dakota, commenced one month later on February 6, 1995, and ended June 23, 1995. Because of Hoffman's non-participation with the development of his retraining program, the first he heard of the Meyer VoTech program was on January 25, 1995, when he received a letter from the Bureau informing him about the program. Two days later, on January 27, 1995, the Bureau issued an order awarding rehabilitation benefits and ordering Hoffman to attend the Meyer VoTech program. The order also declared Hoffman ineligible for an additional 25 percent allowance to maintain a second household under N.D.C.C. § 65–05.1–06.1(2)(b). Hoffman testified he received a copy of the order on January 30, 1995. The record clearly reflects Hoffman decided not to attend the Meyer VoTech program within a day or two of receipt of the Bureau's letter dated January 24, 1995.

[¶ 5] On February 7, 1995, the Bureau informed Hoffman he risked suspension of his benefits because he had failed to attend the Meyer VoTech program. In a letter to the Bureau dated February 14, 1995, Hoffman voiced several concerns about the Meyer VoTech program and requested reconsideration on the matter. The Bureau discontinued Hoffman's benefits in an order dated March 13, 1995, for failing to attend, or showing good cause why he should not have attended, the Meyer VoTech program. Hoffman timely requested a formal hearing on the matter.

[¶ 6] During the summer of 1995, the Bureau declared the industrial safety/security and investigations program at Meyer VoTech an unsatisfactory retraining program. Formal hearings were subsequently held on March 15, 1996, and on April 19, 1996. Following the hearings, the ALJ upheld the Bureau's order concluding: 1) a preponderance of the evidence shows the vocational retraining program the Bureau ordered Hoffman to attend was valid under North Dakota law as of January 5, 1995; 2) Hoffman did not have good cause to not attend the retraining program; and 3) the Bureau appropriately discontinued Hoffman's benefits. The Bureau adopted the ALJ's findings of fact and conclusions of law, with the exception of recommended conclusion of law number 8 which stated Hoffman was entitled to reinstatement of his benefits upon notifying the Bureau of his willingness to comply with the Bureau's vocational rehabilitation plan. Instead, the Bureau concluded Hoffman was not entitled to a reinstatement of his benefits until he complied with the Bureau's plan or a

substitute plan. Hoffman appealed to the district court which affirmed the Bureau's order.

## II

[¶ 7] On appeal from a district court's review of a decision by the Bureau, we review·the Bureau's decision. *Hoyem v. North Dakota Workers Compensation Bureau*, 1998 ND 86, ¶ 5, 578 N.W.2d 117. We affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. *Id.;* N.D.C.C. § 28–32–19. In evaluating the findings of fact, we do not make independent findings or substitute our judgment for the Bureau, but determine only whether a reasoning mind reasonably could have determined the findings were proved by the weight of the evidence from the entire record. *Hibl v. North Dakota Workers Compensation Bureau*, 1998 ND 198, ¶ 7, 586 N.W.2d 167.

## III

[¶ 8] The purpose of vocational rehabilitation is to return a disabled employee to substantial gainful employment with a minimum of retraining, as soon as possible after an injury. N.D.C.C. § 65–05.1–01(3). The version of N.D.C.C. § 65–05.1–01(3) applicable to this case defined substantial gainful employment as:

> bona fide work, for remuneration, which is reasonably attainable in light of the individual's injury, medical limitations, age, education, previous occupation, experience, and transferable skills, and which offers an opportunity to restore the employee as soon as practical. . . . [1]

We will not reverse the Bureau's selection of a vocational rehabilitation plan under N.D.C.C. ch. 65–05.1 if there is "evidence from which a reasoning mind could have reasonably concluded that the rehabilitation plan would return [the worker] to substantial gainful employment which was reasonably attainable in light of his injury and which would substantially rehabilitate his earning capacity. . . ." *Held v. North Dakota Workers Compensation Bureau*, 540 N.W.2d 166, 169 (N.D.1995) (quoting *Thompson v. North Dakota Workers' Compensation Bureau*, 490 N.W.2d 248, 255 (N.D.1992).

[¶ 9] Hoffman argues his nonattendance at the retraining program should be excused because the program selected by the Bureau was subsequently declared unsatisfactory for retraining, and thus would not have returned him to substantial gainful employment under N.D.C.C. § 65–05.1–01(3). We disagree with Hoffman's argument, as it mistakenly assumes that a retraining program's ability to return a claimant to gainful employment may be assessed with hindsight. "The question for the hearing officer, and for this court . . . is whether the plan, *at the time*, gave [the claimant] a reasonable opportunity to obtain substantial gainful employment. . . ." *Lucier v. North Dakota Workers Compensation Bureau*, 556 N.W.2d 56, 60 (N.D.1996) (emphasis added). Thus, our focus in this case is whether the program was viable at the time the Bureau made its selection.

[¶ 10] All of the information the Bureau considered at the time it selected the Meyer VoTech program indicated the program would offer Hoffman a reasonable opportunity for gainful employment. The vocational rehabilitation consultant relied on the placement figures provided by Meyer VoTech and the school's assurances it would work to accommodate a student's physical and academic needs. Although the placement figures were only for the first class to complete the training program and were not entirely accurate, the correct figures still showed a reasonable opportunity for employment upon completion of the program. Government statistics at

---

1. In 1995, N.D.C.C. § 65–05.1–01(3) was amended by the legislature, but the amendment does not appear significant to the issue before us. 1995 N.D.Sess. Laws Ch. 628 § 2. In any event, unless otherwise provided the statutes in effect on the date of an injury govern workers' compensation benefits. *Thompson v. North Dakota Workers' Compensation Bureau*, 490 N.W.2d 248, 251 (N.D.1992) (citing *Gregory v. North Dakota Workmen's Compensation Bureau*, 369 N.W.2d 119 (N.D.1985)).

the time also indicated this particular field was expected to grow at a faster than average rate through the year 2005. On these facts, we conclude the Bureau's finding that the Meyer VoTech program would provide Hoffman with a reasonable opportunity for gainful employment as of January 5, 1995, when the program was selected, is supported by a preponderance of the evidence.

[¶ 11] Hoffman also crafts a due process argument from the fact the Meyer Vo-Tech program was subsequently declared invalid. Hoffman claims he was denied due process because the Bureau refused to rely on any evidence following the date Hoffman was ordered to begin his vocational retraining. He asserts the fact the Meyer VoTech program was declared unsatisfactory should have been considered by the Bureau in determining whether the program would return him to substantial gainful employment. On these facts, we disagree.

[¶ 12] A person is denied due process or a fair hearing when the defects in the hearing process might lead to a denial of justice. *See, e.g., Carlson v. Job Service North Dakota*, 548 N.W.2d 389, 395 (N.D. 1996). The fundamental requirements of due process are notice of the contemplated action and an opportunity to be heard. *Beckler v. North Dakota Workers Compensation Bureau*, 418 N.W.2d 770, 773 (N.D.1988) (citations omitted). After a thorough review of the record, we conclude Hoffman had a full and fair opportunity to present evidence at the hearing, the hearing officer acted impartially with a view toward uncovering all relevant facts and the evidence was carefully and conscientiously considered by the Bureau. Although there is evidence some students enrolled at Meyer VoTech were upset with the quality of the school's programs and their placement prospects upon finishing, the Bureau was not aware of these concerns when it selected the program for Hoffman. As we have said, the Bureau's assessment of a rehabilitation program's viability is judged by evidence the Bureau has before it at the time it makes the decision. We are not convinced a denial of justice occurred in this hearing process, and therefore conclude Hoffman was not denied due process.

## IV

[¶ 13] Hoffman also argues the Meyer VoTech retraining program was incapable of returning him to substantial gainful employment because he was not psychologically fit for work within the field selected by the Bureau. In challenging the Bureau's finding, Hoffman relies upon the psychological interview and evaluation performed by Dr. Robert Gulkin, a clinical psychologist. Dr. Gulkin conducted a psychological evaluation of Hoffman in January and February of 1996. Relying on his interviews with Hoffman, Dr. Gulkin testified Hoffman has a personality disorder affecting his ability to interact with others. According to Dr. Gulkin, the demands of a Meyer VoTech program would not be well-suited for Hoffman's personal skills and attributes. He further explained, "[t]he nature of the job involves interpersonal contact, the nature of which involves dispute disagreement and will generate stress that I think will exceed Mr. Hoffman's capacity to deal with."

[¶ 14] The vocational consultant's preparation of a rehabilitation plan for Hoffman was based primarily on a paper review of Hoffman's file because he was instructed to have no personal contact with Hoffman. But the counselor expressly delineated the factors he took into consideration when selecting Hoffman's vocational rehabilitation program, including: past work history, physical limitations, injury, medical restrictions and education. Hoffman's treating physician specifically approved the job goal of a safety technician and approved the safety/security investigations program as an appropriate retraining program for him. Although Dr. Gulkin testified Hoffman's personality disorder affects his interpersonal relationships, he recognized Hoffman's use of alcohol and marijuana affected his relationships as well. Dr. Gulkin also testified Hoffman was psychologically capable of performing some jobs falling within the job description of a safety technician. Thus, Hoffman's personality disorder is not necessarily incompatible with employment in the area of safety/security investigations or the training program at Meyer VoTech. We conclude

there was evidence from which a reasoning mind could have reasonably concluded the rehabilitation plan selected for Hoffman would return him to substantial gainful employment which was reasonably attainable in light of his injury and which would substantially rehabilitate his earning capacity.

## V

[¶ 15] Finally, Hoffman argues he had "good cause" under N.D.C.C. § 65–05.1–04(6) to not attend the Meyer VoTech program. Section 65–05.1–04(6) provides in part:

> If, without good cause, the injured employee ... fails to attend a specific qualified rehabilitation program within ten days from the date the rehabilitation program commences, the employee is in noncompliance with vocational rehabilitation.

Although the statute does not define "good cause," we recently adopted the definition of "good cause" used in the context of our unemployment compensation statutes. *See Fuhrman v. North Dakota Workers Comp. Bureau,* 1997 ND 191, ¶ 8, 569 N.W.2d 269 (quoting *Lambott v. Job Service North Dakota,* 498 N.W.2d 157, 159 (N.D.1993)):

> In another context, whether a claimant for unemployment compensation had good cause to refuse to apply for or accept suitable work, we defined good cause as "a reason that would cause a reasonably prudent person to refuse to apply for employment under the same or similar circumstances."

Thus, a worker's compensations claimant has "good cause" for not attending a rehabilitation program if the claimant "has a reason that would cause a reasonably prudent person to refuse to attend the rehabilitation program under the same or similar circumstances." *Id.* at ¶ 9. Whether a claimant has "good cause" under N.D.C.C. § 65–05.1–04(6) is determined under an objective, reasonable person standard.

[¶ 16] In *Fuhrman,* the Bureau scheduled the claimant, Dion Fuhrman, to attend a vocational rehabilitation training program in Minneapolis, Minnesota. 1997 ND 191 ¶ 3, 569 N.W.2d 269. Upon being informed of the program, Fuhrman advised the Bureau he did not have the financial means to relocate to Minneapolis while maintaining his home and family in Bismarck without additional benefits or an advance of his 25 percent housing allowance.[2] *Id.* at ¶ 4. The Bureau denied his request for additional benefits or an advance, and suspended his benefits when he did not attend the training program. *Id.* At the administrative hearing, the ALJ concluded Fuhrman had shown good cause for failing to attend the selected training program. *Id.* at ¶ 5. But the Bureau concluded Fuhrman's financial circumstances did not amount to good cause for failing to attend the rehabilitation program and affirmed its order suspending benefits. *Id.* On appeal, we stated:

> One can certainly envision circumstances where a claimant simply cannot afford to attend a training program without the help of some advance payment, especially when the training requires, as in this case, a temporary relocation to an out-of-state community. One can envision numerous circumstances involving economic or financial hardship which, without an advance, would cause a reasonably prudent person not to attend a rehabilitation training program far away from home for financial reasons.

*Id.* at ¶ 10. We accordingly held the claimant had "good cause" to not attend the rehabilitation program.

[¶ 17] In *Fuhrman,* we noted the retraining program selected for the claimant was outside the state and forced the claimant to leave behind his wife and home in Bismarck. Although Hoffman's program was not out-of-state nor did he have to leave a wife or family behind, the fact remains the distances

---

2. N.D.C.C. § 65–05.1–06.1(2)(b) provides in relevant part:

2. If the appropriate priority option is short-term or long-term training, the vocational rehabilitation award must be within the following terms:

b. The rehabilitation allowance must include an additional twenty-five percent when it is necessary for the employee to maintain two households. . . .

from home to the rehabilitation program in both cases are not commutable. Hoffman would have had to make living arrangements in Minot, and that requires the expense of maintaining a second home just as in *Fuhrman*. The fact Hoffman was single and without a second income earner in his permanent home, moreover, only heightens the economic burden of having to attend a rehabilitation program in another location.

[¶ 18] The Bureau nevertheless argues its denial of Hoffman's housing allowance does not amount to "good cause" because Hoffman admitted his decision to not attend the rehabilitation program was made prior to receiving the Bureau's order denying the housing allowance. Thus, the Bureau argues, the denial of the housing allowance cannot justify his absence from the retraining because at the time Hoffman made his decision not to attend, he was unaware the 25 percent allowance would not be granted. We disagree with the State's argument for two reasons. First, the record reflects Hoffman contacted the Bureau on two occasions prior to the date he would by statute be in noncompliance.[3] An internal Bureau memorandum indicates on January 25, 1995, the same day Hoffman received the Bureau's letter first informing him about the program, Hoffman's attorney contacted the Bureau and discussed with five of its representatives the vocational consultant's report and Meyer VoTech program. Apparently Hoffman's concerns with the program were voiced because at the conclusion of the discussion the Bureau gave Hoffman three options: 1) attend the program in Minot, 2) stipulate to settlement, or 3) be in non-compliance. Two days later, on January 27, 1995, the Bureau issued its order ordering Hoffman to attend the Meyer VoTech

program, awarding him rehabilitation benefits for the program, and summarily denying the 25 percent household allowance he was entitled to by statute. In a letter to the Bureau dated February 14, 1995, Hoffman voiced several concerns about the Meyer Vo-Tech program and requested reconsideration on the matter. One of Hoffman's concerns was not being able to afford renting an apartment in Minot on such short notice, especially since the Bureau denied him a 25 percent household allowance. Clearly, Hoffman notified the Bureau of his concerns about the Meyer VoTech program prior to being in noncompliance with the Bureau's order.

[¶ 19] Second, we refuse to hold a claimant to a decision he or she made shortly after being informed of an approved rehabilitation program, when after an objective analysis "good cause" is found to exist for the noncompliance. A claimant's benefits should not be discontinued just because some of the claimant's reasons for not attending may not be the reasons which give rise to the "good cause," as long as there exists a reason for "good cause."[4] *See Lambott*, 498 N.W.2d at 159 (" 'good cause' is *a reason* that would cause a reasonably prudent person to refuse to apply for employment under the same or similar circumstances") (emphasis added). The Bureau's argument ignores the objective standard we have adopted when determining whether a claimant had "good cause" to not attend an approved rehabilitation program. Given our analysis of "good cause" turns on whether a reasonable and prudent person under the same or similar circumstances would have failed to comply, it is difficult to understand the Bureau's emphasis on Hoff-

---

3. Under N.D.C.C. § 65–05.1–04(6) a claimant is in noncompliance if, without good cause, he or she *"fails to attend* a specific qualified rehabilitation program *within 10 days* from the date the rehabilitation program commences." (Emphasis added.) Thus, Hoffman was not in noncompliance for failure to attend until February 16, 1995.

4. In other contexts, we have refused to look at a person's subjective beliefs at all when applying an objective, reasonable person standard. For instance, we analyze whether a police officer has a reasonable suspicion for an investigative stop under an objective, reasonable person standard.

*See, e.g., State v. Hawley*, 540 N.W.2d 390, 392 (N.D.1995). In *Hawley*, the officer candidly admitted he did not form any suspicions of criminal activity, yet we upheld the investigative stop because "the reasonable-and-articulable-suspicion standard is objective, and it does not hinge upon the subjective beliefs of the arresting officer." *Id.* (concluding the officer "had a reasonable and articulable suspicion, ... irrespective of his own belief, [since] there was an 'objective manifestation' to lead a reasonable person in [the officer's] position to believe that a traffic violation may be taking place." *Id.* at 393.

man's state of mind the day or two after receiving the Bureau's January 24, 1995, letter. Indeed, Hoffman may have decided not to attend the program soon after receiving the letter, but he also had until February 16 to change his mind before he was in noncompliance under the statute. Whether or not Hoffman would have elected to attend the Meyer VoTech program if he had been awarded the 25 percent household allowance is pure speculation—speculation we need not entertain under the objective standard we have adopted for the "good cause" analysis under N.D.C.C. § 65–05.1–04(6).

[¶ 20] We said in *Fuhrman* there are numerous circumstances involving economic or financial hardship which "would cause a reasonably prudent person not to attend a rehabilitation training program far away from home for financial reasons." 1997 ND 191, ¶ 10, 569 N.W.2d 269. On January 25, 1995, without any other prior notice, Hoffman was informed the Bureau had approved the Meyer VoTech program which was to commence 12 days later. Even though Hoffman voiced concerns to the Bureau through his attorney on that same day, two days later the Bureau ordered Hoffman to attend the program, while denying him a 25 percent household allowance which he was entitled to by statute. The issue is whether a reasonably prudent person, faced with having to maintain two households without the 25 percent second domicile allowance, would choose not to attend the Meyer VoTech program. We hold, as a matter of law, a reasonably prudent person in these circumstances would have refused to attend.

[¶ 21] We conclude Hoffman had "good cause" under N.D.C.C. § 65–05.1–04(6) to not attend the approved rehabilitative program when the Bureau wrongfully denied him a second domicile allowance. The Bureau's order terminating Hoffman's benefits for noncompliance with the rehabilitation plan is reversed, and the case is remanded for reinstatement of benefits and payment of accrued benefits erroneously terminated.

[¶ 22] NEUMANN and KAPSNER, JJ., and CYNTHIA A. ROTHE–SEEGER, D.J., concur.

[¶ 23] CYNTHIA A. ROTHE–SEEGER, D.J., sitting in place of SANDSTROM, J., disqualified.

VANDE WALLE, Chief Justice, dissenting.

[¶ 24] I dissent to part V of the majority opinion.

[¶ 25] Hoffman contends the Bureau erred in determining he did not have good cause to not attend the retraining, and therefore the Bureau improperly suspended his disability and rehabilitation benefits. He contends the Bureau's failure to provide him with reasonable notice prior to the program's starting date excuses his nonattendance.

[¶ 26] The vocational rehabilitation statute expressly declares the goal of vocational rehabilitation is to return an injured employee to substantial gainful employment as quickly and with as little retraining as possible. *See* N.D.C.C. 65–05.1–01(3). The hearing officer agreed with Hoffman there was not much time to prepare to attend the program. Despite this concern, the hearing officer concluded the preponderance of the evidence shows the program was a qualified program at the time the Bureau issued its order and claimant made no attempt to find out if he could start the program late. The record indicates the Bureau has been working with Hoffman since December 1992 to formulate a vocational rehabilitation plan. Furthermore, Hoffman did not contact the Bureau or Meyer VoTech to inquire about possibly starting the program late. Instead, Hoffman waited until he had received notice his benefits were going to be suspended before contacting the Bureau with this alleged concern. I believe the Bureau's finding Hoffman did not have good cause to not attend training was supported by a preponderance of the evidence.

[¶ 27] Relying on *Fuhrman v. North Dakota Workers Compensation Bureau*, 1997 ND 191, ¶ 10, 569 N.W.2d 269, Hoffman also maintains the Bureau erred in concluding his lack of financial resources did not constitute good cause excusing him from attending the retraining program. But this case is distinguishable from *Fuhrman*, where we concluded economic reasons can amount to good

cause when an employee fails to comply with a rehabilitation training program.

[¶ 28] In *Fuhrman,* we emphasized the retraining program selected for the claimant was outside the state. We also recognized the claimant was forced to leave behind his wife and home in Bismarck. The circumstances in the present case are quite different and therefore support a different conclusion. First, unlike Fuhrman, Hoffman was ordered to attend a training program within North Dakota, and also much closer in distance. Second, Hoffman, who lives by himself, was not forced to leave behind an immediate family as did Fuhrman. Although the majority posits otherwise, the present case is also different because Hoffman did not contact the Bureau to inform them of any alleged monetary concerns prior to the starting date of the retraining program, although he did contact the Bureau with a litany of objections prior to the expiration of the 10 day grace period. Hoffman did not contact the Bureau until after his training was scheduled to begin and he had received notice his benefits would be suspended. Fuhrman, in contrast, notified the Bureau with his concerns prior to the suspension of his benefits. There was not a substantial amount of time between the date the Bureau notified Hoffman he was to attend the program and the start of the program. But, North Dakota does not have a large number of programs and this may often be the case for those claimants whose case is determined shortly before a new semester begins.

[¶ 29] It seems to me it would be "reasonably prudent" for persons faced with the loss of benefits for failure to attend the rehabilitation program to carefully examine their position emphasizing the reasons for attending rather than not attending the program.

[¶ 30] After reviewing the record, I conclude a reasoning mind could have reasonably determined, as did the Bureau in this case, that Hoffman failed to prove his financial situation constituted good cause to not attend the retraining program. Contrary to our standard of review, as described in the majority opinion, I believe the majority has substituted its judgment for that of the Bureau. I would affirm.

[¶ 31] Gerald W. VandeWalle, C.J.