2001 ND 72

**Larry WRIGHT, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU,** Appellee.

**No. 20000292.**

Supreme Court of North Dakota.

April 17, 2001.

Rehearing Denied May 29, 2001.

Stephen D. Little of Dietz, Little & Haas, Bismarck, ND, for claimant and appellant.

Tracy Vigness Kolb, Special Assistant Attorney General, Bismarck, ND, for appellee.

NEUMANN, Justice.

[¶ 1] Larry Wright appealed the district court order and judgment affirming a North Dakota Workers Compensation Bureau ("Bureau") order determining Wright was not entitled to further disability or rehabilitation benefits. We affirm.

I

[¶ 2] Wright injured his back on September 9, 1985, while he was working as a mechanic for Butler Machinery Company ("Butler") in Minot. Wright applied for workers compensation benefits in connection with his back injury. The Bureau accepted Wright's claim and paid him benefits.

[¶ 3] Wright underwent back surgery in April 1986. Although his treating physician, Dr. Peter Earnshaw, released Wright to return to work in October 1986, Dr. Earnshaw advised Wright to consider pursuing a lighter type of work. The Bureau referred Wright to a vocational rehabilitation service provider. Although a rehabilitation specialist recommended vocational testing and possible retraining for Wright, he chose to continue working at Butler, and his rehabilitation file was closed.

[¶ 4] In September 1988, Dr. Oheneba Boachie Adjei performed lumbar fusion surgery on Wright. As a result of the surgery, Wright was unable to work, and his rehabilitation file was reopened.

[¶ 5] In August 1989, Wright underwent a functional capacity assessment. The physical therapist recommended Wright continue exercising on his own, and

restricted Wright's lifting, bending, sitting, and standing. Dr. Boachie Adjei evaluated Wright in September 1989, and released Wright to return to work within the limits of the August 1989 assessment. A rehabilitation specialist identified a robotics training program at Staples Technical Institute in Staples, Minnesota, within Wright's restrictions. Wright visited the school and, according to the rehabilitation specialist, was "very motivated for retraining." In May 1990, the Bureau issued a rehabilitation order awarding Wright vocational training as a robotics technician. Wright did not appeal the order.

[¶ 6] Wright participated in the vocational training program from July 1990 to May 1992. During his training, Wright was found eligible for social security disability insurance. Upon completion of the program, Wright elected not to return to work. Wright was eligible for and received two years of partial rehabilitation benefits. After his partial rehabilitation benefits expired on May 29, 1994, Wright reapplied for benefits, asserting he had sustained a significant change in his medical condition. The Bureau reinstated Wright's benefits, effective June 12, 1994.

[¶ 7] In March 1995, Dr. Timothy Garvey performed additional lumbar fusion surgery on Wright. A lengthy recovery period followed. In May 1996, Dr. Garvey released Wright for sedentary to light work, starting at two to four hours of work each day with restrictions on bending, twisting, and lifting. However, Wright had an appointment with Dr. Garvey in November 1996, and Dr. Garvey's office note stated Wright was again unable to work. In June 1997, Dr. Garvey released Wright to work at home. A rehabilitation consultant recommended no additional vocational rehabilitation for Wright unless his physical condition improved.

[¶ 8] In March 1998, the Bureau contacted Wright requesting an updated medical report. Because Wright had moved to Ohio, Dr. Garvey referred Wright to Dr. Christopher Cannell, an Ohio physician. Dr. Cannell recommended a ten-week aerobic conditioning and strengthening program for Wright. After he completed the ten-week program, Wright underwent another functional capacity assessment in December 1998. The physical therapist who conducted the assessment concluded Wright qualified for light to medium physical demand work, with restricted lifting, standing, and bending. Dr. Garvey reviewed the functional capacity assessment and opined that Wright should be kept in a light demand category rather than a light to medium category as recommended by the physical therapist. Dr. Garvey and Dr. Cannell agreed Wright was capable of returning to work, although his return would have to be gradual, beginning with two to four hours daily.

[¶ 9] The Bureau issued a notice of its intention to discontinue Wright's benefits as of March 10, 1999, because Wright had been released to return to work. Wright requested reconsideration of the Bureau's decision.

[¶ 10] On February 9, 2000, a formal administrative hearing was held to determine Wright's entitlement to further disability or rehabilitation benefits. The administrative law judge ("ALJ") concluded Wright was employable within his restrictions and recommended the Bureau deny further benefits.

[¶ 11] On February 24, 2000, Wright went to see Dr. Garvey. Following Wright's visit, Dr. Garvey issued a report indicating Wright was permanently disabled from all employment. Based on Dr. Garvey's report, Wright filed a petition for reconsideration on March 15, 2000. The Bureau denied Wright's request for recon-

sideration, explaining the medical evidence was not before the ALJ at the administrative hearing and was not timely. On March 7, 2000, the Bureau issued its final order adopting the ALJ's findings, conclusions, and recommendation. Wright appealed to the district court, which affirmed the Bureau's decision. Wright appealed.

## II

[¶ 12] We exercise limited review in appeals involving Bureau decisions. *Berger v. ND Workers Comp. Bureau*, 2000 ND 224, ¶ 7, 620 N.W.2d 576. Under N.D.C.C. §§ 28-32-19 and 28-32-21, we affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law, its decision violates the claimant's constitutional rights, or its rules or procedure deprived the claimant of a fair hearing. *Jacobson v. ND Workers Comp. Bureau*, 2000 ND 225, ¶ 7, 621 N.W.2d 141. We exercise restraint in determining whether the Bureau's findings of fact are supported by a preponderance of the evidence. *Id.* at ¶ 7. We do not make independent findings or substitute our judgment for that of the Bureau, but determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Id.* at ¶ 7.

## III

[¶ 13] Wright argues the evidence shows he does not have the physical capacity to work as a robotics technician because he does not have the ability to work at all. Wright relies on Dr. Garvey's February 24, 2000, assessment of Wright's ability to work. Dr. Garvey's report indi-

cated Wright is permanently unable to work as of the date of the assessment.

[¶ 14] The administrative hearing to determine Wright's eligibility to further disability or rehabilitation benefits was held on February 9, 2000. At that time, Dr. Garvey had released Wright to light work, restricting his lifting and standing. In his patient progress notes dated April 22, 1999, Dr. Garvey wrote: "At the present time, I do believe that Mr. Wright is capable of gainful employment. However, I believe that he has significant restrictions." Dr. Cannell had similarly concluded Wright could return to work. In a January 12, 1999, letter from Dr. Cannell to the Bureau, Dr. Cannell wrote:

> I do believe that Larry [Wright] is capable of sustained remunerative employment activity. In talking with Mr. Wright, however, he makes it very clear to me that he does not feel he is able to return to work at any intensity level. I don't necessarily agree with this. I feel that he can work again, although it would clearly have to be with restrictions and limitations.

In May 1999, Wright visited Dr. Cannell to discuss Wright's work situation and Dr. Cannell's comments in his January 12, 1999, letter to the Bureau suggesting Wright was capable of sustained remunerative employment activity. Wright insisted he was unable to work eight hours a day. On May 28, 1999, Dr. Cannell wrote to the Bureau again, after consulting Dr. Garvey. Dr. Cannell indicated he and Dr. Garvey agreed that Wright was capable of working two to four hours per day initially, increasing the hours gradually to eight hours per day. Wright did not offer any evidence at the hearing showing he was unable to work, aside from his own testimony. The ALJ found the undisputed medical evidence at the hearing showed

Wright was able to return to work as a robotics technician.

[¶ 15] Reviewing the evidence presented at the hearing, we conclude a reasoning mind could have determined the preponderance of the evidence showed Wright was able to return to work.

[¶ 16] However, Wright argues the issue is not whether a robotics position was ever within his work abilities, but, rather, whether a robotics position is presently appropriate.

▪▪▪ [¶ 17] Under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, information or evidence that has not been offered, admitted, and made a part of the official record of the proceeding generally may not be considered by the administrative agency. N.D.C.C. § 28–32–06(2); *Aggie Inv. GP v. Public Serv. Comm'n*, 470 N.W.2d 805, 811 (N.D.1991). Section 28–32–07, N.D.C.C., provides an exception to this general rule, providing in part:

In any adjudicative proceeding, an administrative agency may avail itself of competent and relevant information or evidence in its possession or furnished by members of its staff, or secured from any person in the course of an independent investigation conducted by the agency, in addition to the evidence presented at the hearing.

Wright did not submit Dr. Garvey's February 24, 2000, assessment to the Bureau until he petitioned the Bureau for reconsideration on March 15, 2000. Thus, the Bureau had no way of knowing the existence of the letter or considering its contents before entering its March 7, 2000, final order.

[¶ 18] Wright could have applied to the district court for leave to offer additional evidence to the agency under N.D.C.C. § 28–32–18, which provides in relevant part:

If an application for leave to offer additional testimony, written statements, documents, exhibits, or other evidence is made to the court in which an appeal from a determination of an administrative agency is pending, and it is shown to the satisfaction of the court that the additional evidence is relevant and material and that there were reasonable grounds for the failure to offer the evidence in the hearing or proceeding, or that the evidence is relevant and material to the issues involved and was rejected or excluded by the agency, the court may order that the additional evidence be taken, heard, and considered by the agency on terms and conditions as the court may deem proper.

*See generally Horsley v. ND Workers Comp. Bureau*, 2001 ND 60, 623 N.W.2d 377 (involving a district court's consideration of a letter received by a claimant from his physician two days after an administrative hearing).

[¶ 19] Wright failed to utilize the procedures available for making Dr. Garvey's February 24, 2000, assessment a part of the record in this case. Accordingly, this evidence is not considered in this appeal.[1]

▪▪▪ [¶ 20] Next, Wright argues that if he can work at all, he can only perform light work. Relying on the description of a field service technician position as provided in the United States Department of Labor's Dictionary of Occupational Titles, Wright argues the average robotics technician job is a heavy labor position.

---

1. Under N.D.C.C. § 65–05–08(1), Wright can reapply for benefits based on this new evidence.

[¶ 21] Employment as a field service technician is only one type of work within the robotics field. According to the testimony of Wright's vocational instructor, Greg Scheler, the robotics field includes a range of employment opportunities. Scheler's testimony and other evidence presented at the hearing indicate robotics employment opportunities are available in the areas of design, sales, repair, installation, maintenance, development, production, operation, distribution, management, manufacturing, and programming. Scheler testified that the different areas of work within the robotics field demand varying levels of physical activity, several of them involving sedentary or light work.

[¶ 22] At oral argument, Wright conceded the existence of light work employment opportunities within the robotics field. He asserted, however, that entry level robotics positions require heavy labor and light work positions are only available with experience.

[¶ 23] During his deposition, Scheler testified:

I've had students that have advanced into management. I've had students that have advanced into sales, but, again, they started out as entry level technicians, and maybe to clarify that you have to start as a tech and you have to know the manufacturing processes that the robots are capable of performing, programming them, those kinds of things.

However, Scheler continued, stating:

But, no, I mean, I don't want to say that those are the only jobs that people can get but people typically will start out as, and I try to be typical, they typically will start out as a field service engineer and advance into sales, management, supervision, yeah, there's—

Wright argues the Bureau did not present evidence showing lighter robotics technician jobs exist in sufficient numbers to form a viable job market. Wright also argues the Bureau did not present evidence showing he has the necessary skills to be a competitively employable robotics technician.

Section 65–05.1–04, N.D.C.C., provides in relevant part:

1. The injured employee shall seek, obtain, and retain reasonable and substantial employment to reduce the period of temporary disability to a minimum. The employee has the burden of establishing that the employee has met this responsibility.

   . . . .

4. If the first appropriate rehabilitation option under subsection 4 of section 65–05.1–01 is return to the same, modified, or alternative occupation, or return to an occupation that is suited to the employee's education, experience, and marketable skills, or on-the-job training, the employee is responsible to make a good faith work trial or work search. If the employee fails to perform a good faith work trial, the bureau may not pay additional disability benefits unless the employee meets the criteria for reapplying for benefits required under subsection 1 of section 65–05–08. . . .

   . . . .

6. If, without good cause, the injured employee fails to make a good faith work search in return to work utilizing the employee's transferable skills, the employee is in noncompliance with vocational rehabilitation. A good faith work search that does not result in placement is not, in itself, sufficient grounds to prove the work injury caused the inability to acquired gainful employment. The

employee shall show that the injury significantly impacts the employee's ability to successfully compete for gainful employment in that the injury leads employers to favor those without limitations over the employee.... In all cases of noncompliance by the employee, the bureau, by administrative order, shall discontinue disability and vocational rehabilitation benefits.

[¶ 24] During the hearing, when asked about his work search efforts, Wright identified one employer with whom he had applied for a robotics technician position. He testified he had not made an effort to look for work since his workers compensation benefits ended in February 1999 because he did not think he was able to work.

[¶ 25] Wright's argument that it is the Bureau's burden to present evidence of currently available jobs and the sufficiency of Wright's skills fails. The Bureau met its responsibilities when it developed Wright's vocational plan and approved training him as a robotics technician. *See* N.D.C.C. § 65–05.1–02(5). After Wright finished training and was released by his doctor to return to work, it was his burden to either find a job or inform the Bureau if he was unable to find a job. *See* N.D.C.C. § 65–05.1–04(1), (2). Scheler's testimony that an entry-level robotics technician "typically" begins as a field service engineer and advances into another area of the robotics field is insufficient to show that Wright's injury significantly impacts his ability to successfully compete for gainful

employment. *See* N.D.C.C. § 65–05.1–04(4). We conclude Wright failed to meet his burden of demonstrating he made a good faith work search.

[¶ 26] Finally, Wright argues he cannot work full time as a robotics technician, so he is entitled to continued benefits.

[¶ 27] Partial disability benefits partially restore an injured worker's earnings, based on a percentage of the difference between the worker's pre-injury earnings and post-injury earning capacity. N.D.C.C. § 65–05–10. Because Wright has not provided any evidence of a loss of earning capacity, there is currently no basis for awarding Wright partial disability benefits.

IV

[¶ 28] Based on the record, Wright was not entitled to further disability or rehabilitation benefits. We affirm.

[¶ 29] VANDE WALLE, C.J., MARING, SANDSTROM, O'KEEFE, S.J., concur.

[¶ 30] The Honorable O'KEEFE, S.J., sitting in place of KAPSNER, J., disqualified.