2002 ND 138

**Mark HOFFMAN, Claimant and Appellant**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee**

and

**Mor–Gran–Sou Electric Coop., Respondent.**

No. 20010310.

Supreme Court of North Dakota.

Aug. 22, 2002.

Kathryn L. Dietz, Dietz & Little Lawyers, Bismarck, N.D., for claimant and appellant.

Lawrence A. Dopson, Special Assistant Attorney General, Zuger Kirmis & Smith, Bismarck, N.D., for appellee.

NEUMANN, Justice.

[¶ 1] Mark Hoffman appealed from a district court judgment affirming a Workers Compensation Bureau order terminating his disability and vocational rehabilitation benefits. Because the Bureau failed to address uncontradicted medical evidence and other evidence favorable to Hoffman, we reverse the judgment and remand the case to the Bureau for further proceedings.

I

[¶ 2] In November 1993, Hoffman injured his low back while employed as ·a lineman with Mor–Gran–Sou Electric Cooperative in Flasher. The Bureau accepted liability and paid associated medical expenses and disability benefits. Hoffman returned to work in a different capacity at Mor–Gran–Sou for a while, but in 1996 the Bureau began vocational rehabilitation efforts. On April 29, 1999, the Bureau issued an order awarding Hoffman a vocational training program as a computer support specialist at Bismarck State College ("BSC"). The program was scheduled to begin June 5, 1999 and continue through May 8, 2001, or until completion of the required course work, whichever first occurred. Hoffman's medical limitations restricted him to "light level work," and his physician, Dr. Carol Krause, approved the training program. Hoffman did not appeal the Bureau's order.

[¶ 3] After Hoffman failed to register for classes, the Bureau issued an order suspending his disability benefits because he was in noncompliance with the rehabilitation program. Because Hoffman was not allowed to register at BSC until his 1970 probation from North Dakota State University ("NDSU") had been lifted, the Bureau found good cause for his not registering and reinstated Hoffman's benefits effective July 1, 1999, after the NDSU probation had been lifted. The Bureau also ordered that Hoffman's training program would begin August 24, 1999 and

continue through May 11, 2001. Hoffman was allowed to take his classes over the Internet from his home in Flasher. Hoffman did not appeal this order.

[¶ 4] On February 11, 2000, the Bureau issued an order suspending Hoffman's disability and vocational rehabilitation benefits effective January 18, 2000, because he had failed to submit school assignments and had received a failing grade in all four of his courses. The Bureau found this constituted a first instance of noncompliance with his rehabilitation plan and advised Hoffman that if the noncompliance continued for 30 days or there was a second instance of noncompliance without good cause, the Bureau would terminate vocational and disability benefits. This order was not appealed. On March 23, 2000, the Bureau reinstated benefits because Hoffman had come back into compliance by registering for courses in the spring 2000 semester and by acquiring a cumulative 2.0 grade point average in his courses by midterm.

[¶ 5] Hoffman visited Dr. Krause on April 20, 2000. Hoffman complained that he had difficulty working at his computer because he was unable to sit for long periods of time. Dr. Krause explained in her psychiatry follow-up notes:

> We reviewed his functional capacity assessment done in August, 1998. It put him in the light category of work. Some how [sic] they stated he could do sitting on a frequent basis. He has consistently told me that he has trouble sitting on a frequent basis. I have never seen him sit in my office at all. Rather, he stands and paces. He has been trying to do his school work. [I]t seems the sitting is his major complaint. He states he is getting behind and concerned about failing. My recommendation at this time would therefore be to have him cut down his course work to 2 classes per semes-

ter to see if he can succeed at this. My second recommendation would be to have a physical therapist visit his home and look at his computer set up to make recommendations about how it could be set up more comfortably for him. Perhaps on an elevated table so he could stand and work at the computer.

[¶ 6] Hoffman's rehabilitation consultant asked Dr. Krause for clarification. Dr. Krause told the rehabilitation consultant that Hoffman could not continue with his four classes for the remaining two weeks of the semester because "[h]e is not tolerating it!!" Hoffman failed all four spring semester courses and was placed on academic suspension. However, because Dr. Krause had placed on Hoffman a medical restriction of two courses, BSC allowed Hoffman a medical extension to complete two of the four courses after the spring semester ended. The Bureau further required that Hoffman register and enroll in an additional class during summer school. The vocational consultant contacted Hoffman and informed him a tutor had been approved once per week and the Bureau would pay his travel expenses to meet with the tutor, but Hoffman said it was too difficult for him to drive to Bismarck. Although Hoffman's home work station was evaluated and improvements were suggested, Hoffman testified he had already tried the improvements suggested to no avail.

[¶ 7] In June 2000, Dr. Krause recommended that Hoffman undergo another functional capacity evaluation ("FCE"), which was conducted in July. The physical therapist reported that the FCE was not a "reliable test effort" because Hoffman "did not give maximum, consistent effort" during the test. The physical therapist reported Hoffman was either "unable or unwilling to fully participate," and "[s]ignificant pain behaviors were an interfering

factor with the testing." Following the FCE, Hoffman again visited Dr. Krause, whose impression of Hoffman upon examination was "[c]hronic low back pain recently flared up by his FCE." Dr. Krause reported:

He did have his FC[E] done on Wednesday and Thursday of this week. States part way through his first day, the pain got so bad that he was unable to tolerate continuing things. States things locked up really bad. He tried to get in to see me yesterday but my schedule was full. States that last night shifting around he felt something pop and things to day [sic] aren't quite as bad as they were yesterday but he's still more sore than usual. We did get the report from the FC[E] and it was an inconsistent test. He was unable to complete enough of it for it to be an accurate test.

[¶ 8] Hoffman received a "B" in each of the two spring semester courses he was allowed to complete during the summer, but he failed the summer school course he had taken, resulting in his cumulative grade point average dropping below 2.0. On September 27, 2000, the Bureau issued an order terminating disability and vocational rehabilitation benefits because Hoffman had failed to comply with the vocational rehabilitation plan without good cause under N.D.C.C. § 65–05.1–04. The Bureau ruled Hoffman did not comply because he failed the summer school course he had taken, which constituted a second act of noncompliance, and he did not fully cooperate in the FCE. Hoffman requested a formal hearing.

[¶ 9] Before the evidentiary hearing, Hoffman's attorney asked Dr. Krause her opinions about Hoffman's medical condition and his capabilities. Dr. Krause responded:

Your first question asked whether "Mr. Hoffman's behavior during FC[E] of

July 21, 2000 and March 30, 2001 GATB testing is more likely than not causally related to chronic [pain] which he experiences?" To this I would reply yes. In regards to your questions about whether he can sit and concentrate at a computer terminal more than 10 or 15 minutes at a time? My answer to this would be no. He is [sic] consistently complained of an inability to sit still. And in the years that I've known him; I've never seen him sit in my office. He usually stands and paces.

In answer to your final question; I do not believe Mr. Hoffman is consciously malingering or exaggerating his pain. I think his pain does keep him from participating in many usual daily activities.

[¶ 10] At the evidentiary hearing, Hoffman presented evidence from the chairman of the computer office technology department at BSC, who testified that because of the compressed summer school schedule the on-line summer course in which Hoffman had enrolled would be the equivalent of two regular semester courses. The chairman also testified a lack of basic keyboarding skills would add more time to the 20 to 25 hours per week required to successfully complete the course. Hoffman had not successfully completed the basic keyboarding course.

[¶ 11] The administrative law judge (ALJ) recommended upholding the Bureau's decision to terminate benefits. The ALJ concluded Hoffman had engaged in a second instance of noncompliance with vocational rehabilitation services without good cause:

The greater weight of the evidence reveals that the claimant, Mark Hoffman, was noncompliant with his vocational training program at Bismarck State College. Hoffman received a failing grade in his Database class during the summer 2000 session at BSC with-

out good cause. The greater weight of the evidence has also revealed that the North Dakota Workers Compensation Bureau and its vocational consultant(s) undertook extensive efforts to work with Hoffman, and to closely monitor his condition and his course work while he was enrolled in the computer support specialist program. The greater weight of the evidence reveals that Hoffman was capable of completing the work assignments and passing the required courses at BSC. However, he was admittedly "too burned out" with college and computers were not an area of interest for him.

[¶ 12] The Bureau adopted the ALJ's recommendations, and the district court affirmed the Bureau's decision. Hoffman appealed.

II

■■■ [¶ 13] On appeal, we review the decision of the administrative agency, rather than that of the district court, although the district court's analysis is entitled to respect. *Paul v. North Dakota Workers Comp. Bureau,* 2002 ND 96, ¶ 6, 644 N.W.2d 884. Under former N.D.C.C. §§ 28–32–19 and 28–32–21, which, effective August 1, 2001, are currently codified at 28–32–46 and 28–32–49, we affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law or violates the claimant's constitutional rights, or its rules or procedure deprived the claimant of a fair hearing. *Id.* In reviewing the Bureau's findings of fact, we determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence. *Klein v. North*

*Dakota Workers Comp. Bureau,* 2001 ND 170, ¶ 6, 634 N.W.2d 530. Questions of law, including whether the Bureau correctly interpreted a statute, are fully reviewable on appeal. *Lawrence v. North Dakota Workers Comp. Bureau,* 2000 ND 60, ¶ 11, 608 N.W.2d 254.

A

■■■ [¶ 14] The purpose of vocational rehabilitation is to return a disabled employee to substantial gainful employment with a minimum of retraining, as soon as possible after an injury occurs. N.D.C.C. § 65–05.1–01(3); *Hoffman v. North Dakota Workers Comp. Bureau,* 1999 ND 66, ¶ 8, 592 N.W.2d 533. The relevant statute in this case, N.D.C.C. § 65–05.1–04(6), provides in part:

If, without good cause, the injured employee fails to attend specific vocational testing, remedial, or other vocational services determined necessary by the bureau or the rehabilitation consultant, the employee is in noncompliance with vocational rehabilitation. If, without good cause, the injured employee fails to attend a scheduled medical or vocational assessment, fails to communicate or cooperate with the vocational consultant, or fails to attend a specific qualified rehabilitation program within ten days from the date the rehabilitation program commences, the employee is in noncompliance with vocational rehabilitation. If, without good cause, the employee discontinues a training program in which the employee is enrolled, the employee is in noncompliance with vocational rehabilitation. If at any time the employee is noncompliant without good cause, subsequent efforts by the employee to come into compliance with vocational rehabilitation are not considered successful compliance until the employee has successfully returned to the job or training program for a period of thirty days. In

all cases of noncompliance by the employee, the bureau, by administrative order, shall discontinue disability and vocational rehabilitation benefits. If, after issuance of the order, the period of noncompliance continues for thirty days, or a second instance of noncompliance occurs without good cause, the bureau may not pay any further disability or vocational rehabilitation benefits, regardless of whether the employee sustained a significant change in medical condition due to the work injury.

In *Fuhrman v. North Dakota Workers Comp. Bureau*, 1997 ND 191, ¶ 9, 569 N.W.2d 269, we said a "claimant has good cause for failing to attend a rehabilitation program if the claimant has a reason that would cause a reasonably prudent person to refuse to attend the rehabilitation program under the same or similar circumstances." Whether a claimant has "good cause" under the statute is determined under an objective, reasonable person standard. *See Hoffman*, at ¶ 15.

 [¶ 15] Just as the Bureau has the burden of establishing that a rehabilitation plan is appropriate, *see Paul*, 2002 ND 96, ¶ 8, 644 N.W.2d 884, the Bureau also has the burden of showing noncompliance with a rehabilitation plan. Once the Bureau establishes noncompliance, it becomes the claimant's burden to establish good cause for noncompliance. *See Fuhrman*, 1997 ND 191, ¶ 7, 569 N.W.2d 269; *compare Wright v. North Dakota Workers Comp. Bureau*, 2001 ND 72, ¶ 25, 625 N.W.2d 256 (holding claimant has burden of demonstrating a good faith work search); *Maginn v. North Dakota Workers Comp. Bureau*, 550 N.W.2d 412, 416 (N.D.1996) (holding same); *Johnson v.*

*North Dakota Workers Comp. Bureau*, 539 N.W.2d 295, 299 (N.D.1995) (holding same). Here, the Bureau met its burden of showing noncompliance with the rehabilitation plan. The issue in this case is whether Hoffman met his burden of demonstrating good cause for noncompliance.[1]

[¶ 16] The ALJ and the Bureau relied on evidence of continuing efforts by vocational rehabilitation consultants who monitored his school performance and attempted to provide assistance for him when necessary. Hoffman's inability to succeed indicated to the ALJ and the Bureau that he had simply failed to put forth the effort required to pass his course work. The ALJ also found:

On July 7, 2000, the vocational consultant contacted Hoffman. *See* Claimant Exhibit No. 469. At that time Hoffman said he was just "too burned out" with school; that computers were not for him; and that he was not an "inside person." *Id.* Hoffman again said that he did not have enough keyboarding skills to complete the Database class. The vocational consultant informed Hoffman that tutoring assistance may only require 1–2 meetings with a tutor. Hoffman responded and said he would not drive to Bismarck and that the air in Bismarck bothered his asthma. The consultant then informed Hoffman that he would need to remain in the Database class to be compliant with his vocational rehabilitation program. *Id.*

. . . .

On July 19, 2000, Hoffman underwent a functional capacities evaluation (FCE) at St. Alexius Human Performance Center. *See* Claimant Exhibit Nos. 456–460. The therapist stated that Hoffman did

---

1. The ALJ did not require the Bureau at the evidentiary hearing to proceed first and establish a prima facie case of noncompliance before allowing Hoffman to demonstrate good

cause for noncompliance. However, Hoffman concedes this error in the order of proof was harmless.

not give maximum consistent effort in the test and that very few of Hoffman's maximal abilities were able to be documented. *Id.* The physical therapist further indicated that Hoffman's participation was not a reliable test effort. The therapist said that Hoffman was unwilling or unable to fully participate in the musculoskeletal evaluation or the positional tolerance activities. Hoffman's heart rate did not change significantly during his complaints of increased pain. The therapist indicated that most of Hoffman's testing was incomplete or at less than maximal levels. The therapist stated that she was unable to test Hoffman to maximal safe abilities but he generally fell between sedentary and light categories of work.

While this evidence, if uncontradicted, would support a finding of an absence of good cause for noncompliance with a vocational rehabilitation plan, the ALJ and the Bureau did not address any of the medical or other evidence favorable to Hoffman.

[¶ 17] In *Fuhrman,* 1997 ND 191, 569 N.W.2d 269, the Bureau's rehabilitation plan required the claimant to relocate from Bismarck to Minneapolis, Minnesota to attend school. The claimant advised the Bureau that he did not have the financial ability to relocate for training while maintaining his home and family in Bismarck without additional benefits or an advance on his statutory household allowance. The Bureau denied the request for additional financial support, and when the claimant failed to attend the training classes, the Bureau informed him he was in noncompliance with the rehabilitation plan and suspended his disability and rehabilitation benefits. We reversed the order terminating benefits and rejected the Bureau's determination that a claimant's failure to comply with a rehabilitation plan for economic reasons cannot constitute good cause for noncompliance:

The purpose of a vocational retraining program is to substantially rehabilitate a worker to his pre-injury earning capacity. *Held v. N.D. Workers Compensation Bureau,* 540 N.W.2d 166, 169 (N.D. 1995). To meet this objective, the Bureau must devise a training plan which is practically workable and economically feasible for the claimant. When a claimant comes forward, as Fuhrman did in this case, with a credible objection that he does not have the financial ability to relocate and attend an out-of-state training program, the Bureau cannot simply reject the claimant's assertion and evidence of financial inability without further investigation of the claimant's financial and economic circumstances. The Bureau, acting as both a factfinder and an advocate in considering a worker's claim, cannot place itself in a fully adversarial position to the claimant, but must consider the entire record, clarify inconsistencies, [and] explain its reasons for disregarding evidence favorable to the claimant ...

*Fuhrman,* at ¶ 11 (footnote omitted). The Bureau's obligation to adequately explain its disregard of evidence favorable to the claimant applies with particular force to favorable medical evidence. *See, e.g., Geck v. North Dakota Workers Comp. Bureau,* 1998 ND 158, ¶ 13, 583 N.W.2d 621; *Loberg v. North Dakota Workers Comp. Bureau,* 1998 ND 64, ¶ 11, 575 N.W.2d 221; *Flink v. North Dakota Workers Comp. Bureau,* 1998 ND 11, ¶¶ 12–13, 574 N.W.2d 784; *McDaniel v. North Dakota Workers Comp. Bureau,* 1997 ND 154, ¶¶ 17, 20, 567 N.W.2d 833; *Blanchard v. North Dakota Workers Comp. Bureau,* 1997 ND 118, ¶¶ 23, 27, 565 N.W.2d 485.

[¶ 18] Section 28–32–46(7), N.D.C.C., requires that we affirm an agency order unless "[t]he findings of fact

made by the agency do not sufficiently address the evidence presented to the agency by the appellant." Because the Bureau's order precedes the effective date of N.D.C.C. § 28–32–46(7), it is questionable whether this statutory amendment is applicable in this case. *See* N.D.C.C. § 1–02–10 (providing no statute is retroactive unless expressly declared to be so). It has been suggested that our prior caselaw obligating the Bureau to explain its disregard of evidence favorable to a claimant, decided before the effective date of N.D.C.C. § 28–32–46(7), does not apply in this case because nothing in former N.D.C.C. § 28–32–19 authorized this Court to judicially impose that requirement. However, we presume the Legislature is aware of judicial construction of a statute, and when it fails to amend a particular statutory provision, we further presume it has acquiesced in that construction. *See Rodenburg v. Fargo–Moorhead YMCA*, 2001 ND 139, ¶ 26, 632 N.W.2d 407. The Legislature's failure to amend statutory language interpreted by the courts is evidence that the court's interpretation accords with the legislative intent. *Id.* Former N.D.C.C. § 28–32–19 was not amended to change our construction of the statute, and when it was recodified in 2001, the Legislature specifically added the requirement that an administrative agency sufficiently address the evidence presented by the appellant. The enactment of N.D.C.C. § 28–32–46(7), although not retroactive, certainly provides a "clear sense of direction" in determining the legal standard to be applied under the former statute. *Jerry Harmon Motors, Inc. v. Farmers Union Grain Terminal Ass'n*, 337 N.W.2d 427, 432 (N.D.1983). Therefore, if N.D.C.C. § 28–32–46(7) is inapplicable in this case, our prior caselaw directing the Bureau to explain its disregard of evidence favorable to the claimant controls.

[¶ 19] The Bureau in this case ignored evidence favorable to Hoffman. The only medical evidence in the record is from Hoffman's physician, Dr. Krause. She recommended no more than two classes for Hoffman because he was not tolerating the amount of time it took to sit at the computer and take the courses. Her reports, combined with the testimony of the chairman of the computer office technology department at BSC about the compressed summer school schedule, indicates Hoffman was simply unable, for medical reasons, to successfully complete the summer course. Dr. Krause also said Hoffman was not unwilling, but was "unable" to complete the FCE because of his pain. Because the Bureau failed to give any explanation for its disregard of this evidence, the case must be remanded to the Bureau for reconsideration.

B

[¶ 20] Hoffman argues a willful failure to give a maximum consistent effort during an FCE cannot be an act of noncompliance under N.D.C.C. § 65–05.1–04(6) because the statute lists as an incident of noncompliance only an injured employee's failure "to attend a scheduled medical or vocational assessment, . . ." Because Hoffman was present at the FCE, he argues his performance at the FCE cannot serve as the basis for a second act of noncompliance under the statute.

[¶ 21] The primary purpose of statutory construction is to ascertain legislative intent. *Shiek v. North Dakota Workers Comp. Bureau*, 2001 ND 166, ¶ 17, 634 N.W.2d 493. We construe statutes to avoid absurd and ludicrous results. *Id.* We think Hoffman's interpretation of the statute leads to an absurd and ludicrous result. Under Hoffman's construction, all he needed to do to comply with the statute is be physically present for the

FCE. We believe the word "attend" in the statute clearly contemplates not only a mere physical presence, but also participation in the medical·or vocational assessment. We therefore conclude a willful failure to give a maximum consistent effort during an FCE can constitute an act of noncompliance under N.D.C.C. § 65–05.1–04(6).

### III

[¶ 22] The judgment is reversed and the case is remanded to the Bureau for further proceedings.

[¶ 23] VANDE WALLE, C.J., MARING, and JAMES M. BEKKEN, District Judge, concur.

[¶ 24] The Honorable JAMES M. BEKKEN, District Judge, sitting is place of KAPSNER, J., disqualified.

SANDSTROM, Justice, dissenting.

[¶ 25] I respectfully dissent. The majority wrongly concludes that prior to ·August 1, 2002, the Workers Compensation Bureau's "failure to adequately explain its disregard of favorable medical evidence" automatically requires that this Court remand the case to the Bureau for further consideration. In addition, the majority's application of the doctrine of legislative acquiescence is not consistent with the standard recently articulated by a majority of this Court in *State ex rel. Clayburgh v. American West Community Promotions, Inc.*, 2002 ND 98, 645 N.W.2d 196.

### I

[¶ 26] When reviewing an administrative agency's factual findings, we determine only whether "a reasoning mind reasonably could have determined. ·the findings were proven by the weight of the evidence from the entire record." *Flink v. N.D. Workers Compensation Bureau,*

1998 ND 11, ¶ 9, 574 N.W.2d 784; *see also Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214, 220 (1979). "In considering whether the Bureau's findings of fact are supported by a preponderance of the evidence, we exercise restraint and do not make independent findings of fact or substitute our judgment for the Bureau's determination." *Symington v. N.D. Workers Compensation Bureau,* 545 N.W.2d 806, 808 (N.D.1996).

[¶ 27] Under N.D.C.C. § 28–32–19 (1991), the statutory authority in effect at the time of the Bureau's order:

the court must affirm the order of the agency unless it shall find that any of the following are present:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. ˙Provisions of this chapter have not been˙ complied˙ with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

[¶ 28] Here, rather than relying on the enumerated statutory provisions for modifying or reversing an agency's order, the majority incorrectly concludes, at ¶ 19, that "[b]ecause the Bureau failed to give any explanation for its disregard of this evidence, the case must be remanded to the Bureau for reconsideration." This basis relied on by the majority is not an enumerated ground under the statute in effect at the relevant time. The statute is exclusive and mandatory. The "court

*must affirm* the order of the agency *unless*" it finds one of the enumerated grounds is present.

[¶ 29] This Court is not permitted to create an additional method for modifying or reversing an agency's order when a statute explicitly provides the means by which an agency decision may be overturned. Section 1–01–06, N.D.C.C., specifically provides: "In this state there is no common law in any case where the law is declared by the code." The common law is the "body of law derived from judicial decisions, rather than from statutes or constitutions." Black's Law Dictionary 270 (7th ed.1999).

[¶ 30] If a particular statute is designed to cover the entire field to which it relates, it does so to the exclusion of the common law. *In re White*, 69 N.D. 61, 284 N.W. 357, 358–59 (1939). The statute in question is unambiguous, mandatory, and exclusive. Under N.D.C.C. § 28–32–19 (1991), this court must affirm, because none of the enumerated exceptions are present.

## II

[¶ 31] The majority attempts to justify its conclusion and reliance on previous judicial error by invoking, at ¶ 18, the doctrine of legislative acquiescence. The doctrine of legislative acquiescence is a method of determining legislative intent. *Clayburgh*, 2002 ND 98, ¶ 50, 645 N.W.2d 196 (Sandstrom, J., dissenting). Legislative intent is used to clarify the meaning of a statute when its intent is not clear on its face; accordingly, when a statute is clear and unambiguous on its face, "it is improper for the courts to attempt to construe the provisions so as to legislate additional requirements or proscriptions which the words of the provisions do not themselves provide." *Haggard v. Meier*, 368 N.W.2d 539, 541 (N.D.1985); *see also*

N.D.C.C. § 1–02–05 ("When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Section 28–32–19, N.D.C.C. (1991), is unambiguous. The majority has not asserted that N.D.C.C. § 28–32–19 is unclear or ambiguous. Also unambiguous is N.D.C.C. § 1–01–06: "In this state there is no common law in any case where the law is declared by the code." The majority's use of the doctrine of legislative acquiescence is improper when the statute in question is neither unclear nor ambiguous.

[¶ 32] In addition, the majority violates its own standards for ascertaining legislative acquiescence to the interpretations by other branches. The majority does not apply the recently redefined law of legislative acquiescence, as articulated in *Clayburgh*, 2002 ND 98, ¶¶ 11–12, 645 N.W.2d 196. In *Clayburgh*, a majority of this Court concluded the doctrine of legislative acquiescence did not apply to an administrative agency's interpretation of a statute because the legislature's attention had not been specifically directed to the agency's interpretation. *Id.* at ¶ 12. Here, the majority, at ¶ 18, cites our case law prior to *Clayburgh*, and concludes "[t]he Legislature's failure to amend statutory language interpreted by the courts is evidence that the court's interpretation accords with the legislative intent," with no mention of whether the Legislature's attention was specifically directed to the Court's interpretation.

[¶ 33] The majority opinion's disregard of the standard articulated in *Clayburgh* either limits the *Clayburgh* standard to instances when the doctrine of legislative acquiescence is applied to the executive branch's interpretation of a statute, or signals a reluctance to reaffirm the standard. The former would create two separate doc-

trines of legislative acquiescence dependent upon whether the executive branch interprets a statute or whether the judicial branch interprets a statute—a distinction not supported by any meaningful discussion or authority. The latter result is preferable because it would restore our formulation of legislative acquiescence law prior to *Clayburgh*—the legislature is presumed to know the construction of its statutes by the executive and judicial branches, and the failure to amend the statute indicates legislative acquiescence in that construction. *See, e.g., Western Nat'l Mut. Ins. Co. v. University of North Dakota*, 2002 ND 63, 643 N.W.2d 4; *Clarys v. Ford Motor Co.*, 1999 ND 72, 592 N.W.2d 573; *Effertz v. N.D. Workers Compensation Bureau*, 525 N.W.2d 691 (N.D.1994); *Eklund v. Eklund*, 538 N.W.2d 182 (N.D. 1995); *Capital Electric Coop., Inc. v. Public Service Comm'n*, 534 N.W.2d 587 (N.D. 1995).

[¶ 34] Because the relevant statutes are unambiguous, exclusive, and mandatory, legislative acquiescence does not apply under either the *Clayburgh* or the pre-*Clayburgh* standard. The majority's failure to address *Clayburgh* is lacking in principle.

## III

[¶ 35] Here, as in *Horob v. N.D. Workers Compensation Bureau*, 2000 ND 114, ¶ 20, 611 N.W.2d 875, there is evidence from which a reasoning mind could reasonably find that Hoffman did not have good cause for his failure to comply with his vocational rehabilitation. *See id.* The record reveals: (1) Hoffman had a previous instance of noncompliance without good cause; (2) Hoffman declined the assistance of a tutor; (3) Hoffman "did not give maximum, consistent effort" during a functional capacity evaluation; (4) Hoffman's grade point average dropped below the required level; and, (5) Hoffman admitted he was "too burned out" with college, and computers were not an area of interest for him.

[¶ 36] Because, from this evidence, a reasoning mind reasonably could have determined the Bureau's findings, that Hoffman did not have "good cause" for his noncompliance with his vocational rehabilitation plan, were proven by the weight of the evidence in the record, I would affirm the Bureau's decision to terminate Hoffman's disability and vocational rehabilitation benefits.

[¶ 37] Dale V. Sandstrom