# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND220

State of North Dakota by and through
Workforce Safety and Insurance,                                    Appellant

v.

Leonard Taylor,                                                         Appellee

and

Industrial Contracting, Inc.,                                      Respondent

No. 20190059

Appeal from the District Court of Mercer County, South Central Judicial District, the Honorable Cynthia M. Feland, Judge.

REVERSED AND REMANDED.

Opinion of the Court by VandeWalle, Chief Justice.

Jacqueline S. Anderson, Special Assistant Attorney General, Fargo, ND, for appellant.

Dean J. Haas, Bismarck, ND, for appellee.

**VandeWalle, Chief Justice.**

[¶1]    Workforce Safety and Insurance ("WSI") appealed from a judgment affirming an Administrative Law Judge's ("ALJ") order finding Leonard Taylor had a retained earnings capacity of zero and he had good cause for noncompliance with vocational rehabilitation for failing to perform a good faith work search.  Because the ALJ misapplied the law in determining Taylor had zero retained earnings capacity, we reverse the judgment and remand to the ALJ for further proceedings.

I

[¶2]    On March 11, 2014, Taylor, then 55 years old, sustained severe work-related injuries when he fell 15 feet while employed as an electrician by Industrial Contractors, Inc.  Taylor suffered multiple compression fractures of the thoracic vertebrae from T8-10, with a fragment impinging the spinal cord resulting in partial paraplegia.  Taylor underwent surgery and was diagnosed with a spinal cord injury, incomplete paraplegia at T5-6, neurogenic bowel and bladder, a closed head injury, and neuropathic pain.  While at the hospital, Taylor exhibited numerous signs of cognitive dysfunction.  Taylor was eventually transferred to a hospital rehabilitation unit where he received physical, occupational, and cognitive therapy.  WSI accepted liability for Taylor's claim and paid him benefits.

[¶3]    After he had improved, Taylor was discharged from the rehabilitation unit on April 22, 2014, and he moved out of state.  He began receiving outpatient rehabilitation at various facilities.  He continued to have only partial control of his bladder and bowel and was unable to ambulate without a cane or walker.  He received home health care services which began at 25 hours per week and was subsequently reduced to 12 to 15 hours per week.  He continued to suffer severe pain in his lower back.  His pain was exacerbated by prolonged standing, sitting and walking, which

was relieved by laying down. He required a rolling walker and was not able to return to work. His brain injury also resulted in Taylor having learning deficits.

[¶4] In August 2015, Taylor participated in a functional capacity evaluation ("FCE") which resulted in a recommendation of a light, physical demand level of work. He was given various lifting restrictions and positional restrictions, including no crouching, kneeling or balancing and only occasional standing, walking, bending and climbing. Taylor also began receiving vocational rehabilitation consultations. Retraining options were considered but were thought to be unworkable because of his deficits in memory, processing speed, and attention. The vocational consultant's report ("VCR") was submitted on May 18, 2016. The VCR ruled out the "first appropriate option[s]" for rehabilitation services under N.D.C.C. § 65-05.1-01(4) because Taylor could not return to modified work with his previous employer and no job goals were identified as feasible options. He was continuing to receive personal care assistance up to 15 hours per week. Under N.D.C.C. § 65-05.1-01(6)(c), the VCR set Taylor's retained earnings capacity to be $290 per week based on the state's hourly minimum wage. The VCR listed potential job search goals for Taylor which included working as a telephone sales representative, a customer service representative, or an account or bill collector. WSI then informed Taylor that he was required to perform a good faith work search and document at least five job contacts per day. After Taylor failed to comply with the work search requirements, WSI terminated his benefits under N.D.C.C. § 65-05.1-04(6).

[¶5] Taylor requested rehearing of WSI's decisions that he had a retained earnings capacity of $290 per week and that he failed without good cause to make a good faith work search. Following a hearing, the ALJ reversed both of WSI's decisions. The ALJ accepted the opinion of Taylor's treating physician, Dr. Steven Musick, who considered Taylor to be unemployable, over the opinion of WSI's doctor, Dr. Gregory Peterson. The ALJ found by the "greater weight of the evidence" that "there was no valid release" to work issued to Taylor and the "greater weight of the evidence" established that Taylor has a retained earnings capacity of zero. The ALJ also found

2

that Taylor established good cause for his failure to conduct a good faith work search. WSI appealed to the district court which affirmed the ALJ's decision.

II

[¶6]    WSI argues the ALJ erred in reversing its decisions that Taylor had a retained earnings capacity of $290 per week and that Taylor failed to comply with the good faith work search requirements.

[¶7]    We exercise limited appellate review of administrative agency decisions under the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32. *See Welch v. Workforce Safety & Ins.*, 2017 ND 210, ¶ 11, 900 N.W.2d 822. Under N.D.C.C. § 28-32-46(1) and (5), we must affirm an administrative decision unless "[t]he order is not in accordance with the law" or "[t]he findings of fact made by the agency are not supported by a preponderance of the evidence." In *Higginbotham v. Workforce Safety & Ins.*, 2014 ND 147, ¶ 7, 849 N.W.2d 233, we explained:

> When an ALJ issues findings of fact, conclusions of law, and order, this Court recognizes the ALJ was in a better position to observe and assess the credibility of witnesses and resolve conflicts in evidence, and will therefore apply the same deferential standard of review to the ALJ's factual findings as used for agency decisions. *Bishop [v. Workforce Safety & Ins.]*, 2012 ND 217, ¶ 6, 823 N.W.2d 257. With respect to an ALJ's findings of fact, this Court "do[es] not make independent findings or substitute [its] judgment for that of the ALJ, but determine[s] only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record." *Id.* (citations omitted). Questions of law, on the other hand, are fully reviewable on appeal. *Id.*

[¶8]    In particular, WSI specifically contends that the ALJ incorrectly applied N.D.C.C. § 65-05.1-01(6) in determining Taylor had a zero retained earnings capacity because the ALJ did not require Taylor to rebut the presumption of a retained earnings capacity by clear and convincing evidence.

[¶9]    WSI determined Taylor could not be returned to substantial gainful employment under the "hierarchy of options" contained in N.D.C.C. § 65-05.1-01(4).

3

*Johnson v. N.D. Workforce Safety & Ins. Fund*, 2012 ND 87, ¶ 12, 816 N.W.2d 74.

Section 65-05.1-01(6), N.D.C.C., provides:

> 6.    a.    If the organization concludes that none of the priority options under subsection 4 are viable, and will not return the employee to the lesser of sixty-six and two-thirds percent of the average weekly wage, or ninety percent of the employee's preinjury earnings, the employee shall continue to minimize the loss of earnings capacity, to seek, obtain, and retain employment:
> 
>  (1)   That meets the employee's functional capacities; and
> 
>  (2)   For which the employee meets the qualifications to compete.
> 
>  b.    Under section 65-05-10, the organization shall award partial disability based on retained earnings capacity calculated under this section.
> 
>  c.    For purposes of calculating partial disability based on a retained earnings capacity, an employee is presumed to be capable of earning the greater of the state's hourly minimum wage times the hours of release based on a valid functional capacities examination or the wages payable within the appropriate labor market. This presumption is rebuttable only upon a finding of clear and convincing medical and vocational evidence to the contrary. If the presumption is successfully rebutted, the employee may receive partial disability benefits based on a retained earnings capacity of zero.

[¶10] In concluding Taylor had a retained earnings capacity of zero, the ALJ reasoned:

> 9.    The greater weight of the evidence established the FCE only addressed Mr. Taylor's physical abilities, and no treating doctor approved the FCE; Dr. Musick modified the physical restrictions of the FCE but did not approve any of the job goals and opined repeatedly Mr. Taylor is not employable. For the reasons stated, Dr. Musick's opinion was accepted over Dr. Peterson's opinion. WSI relied on the neuropsych testing results and Mr. Taylor's lack of learning or retention of the computer class to reject the higher option of retraining. WSI also determined the selected job goals were job specific, based on the neuropsych testing results, noting an employer would need to be willing to train Mr. Taylor on the job, which may require repeat trainings due to the large deficits in memory, processing speed and attention.

4

However, the neuropsych testing also recommended eliminating multitasking. This component was not considered or mentioned by WSI. Further, no neuropsychological expert approved the job goals or offered an opinion on Mr. Taylor's capacity to work based on his cognitive deficits. The presumption only applies when a valid FCE releases the worker to work. In this case, there was no valid release. WSI's assertion there was a valid release and Mr. Taylor is able to work is not persuasive.

> 10. The greater weight of the evidence shows Mr. Taylor has a retained earnings capacity of $0. Thus, the Order dated August 16, 2016, must be reversed.

[¶11] The ALJ found the presumption that an employee has a retained earnings capacity was not triggered in this case because there was no "valid FCE" that released Taylor to return to work. In finding the FCE was invalid, the ALJ relied on the same medical and vocational evidence that the statute requires to be proven by clear and convincing evidence in order to rebut the presumption. To permit an employee to avoid the presumption and the heightened burden of proof by merely challenging the validity of an FCE with medical and vocational evidence would render the presumption and the clear and convincing evidence standard of proof to rebut the presumption superfluous. Courts must construe statutes to give meaning to them in their entirety if possible. *See Ridl v. EP Operating Ltd. P'ship*, 553 N.W.2d 784, 787 (N.D. 1996); N.D.C.C. § 1-02-38(2).

[¶12] We believe the ALJ too broadly interpreted the term "valid" in N.D.C.C. § 65-05.1-01(6). To give effect to the entire statute, we conclude a functional capacity examination is "valid" for purposes of N.D.C.C. § 65-05.1-01(6) if the employee gives a "maximum consistent effort" during the examination. *See Drayton v. Workforce Safety & Ins.*, 2008 ND 178, ¶ 32, 756 N.W.2d 320; *Thomas v. Workforce Safety & Ins.*, 2005 ND 52, ¶ 6, 692 N.W.2d 901; *Hoffman v. N.D. Workers Comp. Bureau*, 2002 ND 138, ¶ 21, 651 N.W.2d 601; *Theige v. N.D. Workers Comp. Bureau*, 1997 ND 160, ¶¶ 9-10, 567 N.W.2d 334. Here, the August 2015 FCE noted "*Mr. Taylor gave a reliable effort*" and concluded:

> *Mr. Taylor gave consistent effort with testing. The results of this evaluation are a RELIABLE representation of his current functional*

*abilities. Based on his demonstrated dynamic lifting abilities, Mr. Taylor can be classified in the LIGHT PDC strength level for work. Based on a formal job description provided, his job as an Electrician for International [sic] Contractors Inc. is classified in the MEDIUM PDC strength level for work. Mr. Taylor DOES NOT MEET the strength/lifting/carrying or the positional demands of his job. The above listed Lifting and Positional Restrictions are recommended for working.*

(Emphasis in original). We conclude the FCE was "valid" for purposes of N.D.C.C. § 65-05.1-01(6).

[¶13] We conclude the presumption of a retained earnings capacity was triggered in this case, but the ALJ did not find by clear and convincing evidence that the presumption had been rebutted. Because the ALJ misapplied the law, we reverse the ALJ's finding that Taylor has a zero retained earnings capacity and remand for the ALJ to correctly apply the law. Furthermore, because the issue of retained earnings capacity is interrelated with the issue of good cause for noncompliance with work search requirements, we do not address WSI's argument that the ALJ erred in finding Taylor had good cause for failing to comply with the good faith work search requirements. The ALJ may revisit this issue on remand following resolution of the retained earnings capacity issue.

III

[¶14] In view of our disposition in this case, it is unnecessary to address other issues raised. We reverse the judgment and remand to the ALJ for further proceedings.

[¶15] Gerald W. VandeWalle, C.J.
Jerod E. Tufte
Daniel J. Crothers
Jerod E. Tufte
Lisa Fair McEvers

6